**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANDRE BLAND, et al.,       ) | |
|              ) | |
|     **Plaintiffs,**     ) | |
|              ) | |
|       **v.**       ) | **Case No. 25-cv-03499 (APM)** |
|              ) | |
| TODD BLANCHE, et al.,     ) | |
|              ) | |
|     **Defendants.**[1]     ) | |
|              ) | |

**MEMORANDUM OPINION**

**I.**

Under Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a state may request the Attorney General of the United States certify that it "has established a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State postconviction proceedings brought by indigent prisoners who have been sentenced to death." 28 U.S.C. § 2265(a). Certification changes certain procedures applicable to federal habeas review of the state's capital cases. Such changes include a shorter statute of limitations, more limited grounds for tolling the statute of limitations, and restrictions on petitioners' ability to amend their petitions. *Id.* § 2263; First Am. Compl. for Declaratory and Injunctive Relief, ECF No. 29 [hereinafter Am. Compl.], ¶ 30.

In June 2025, the state of Tennessee applied for such certification. Am. Compl. ¶ 57. As part of its review, the Attorney General solicited public comments. *Id.* The two Plaintiff federal public defender organizations have expended substantial resources to write and submit

---

[1] The court substitutes the current Acting Attorney General, Todd Blanche, for former Attorney General Pamela J. Bondi. *See* Fed. R. Civ. P. 25(d).

comments opposing certification.  Pls.' Opp'n to Mot. to Dismiss [hereinafter Pls.' Opp'n], ECF No. 35, Ex. B, ECF No. 35-2, ¶¶ 3–7; Pls.' Opp'n, Ex. C, ECF No. 35-3, ¶¶ 3–7.  The Attorney General's review remains ongoing.  *See* Status Report, ECF No. 43, ¶ 3 (citing Letter from Daniel E. Burrows, U.S. Assistant Att'y Gen., to Jonathan Skrmetti, Tennessee Att'y Gen. & Rep. (Mar. 27, 2026), https://perma.cc/SW3B-U7A8 [hereinafter Letter]).  On March 27, 2026, the Department of Justice sent a letter to Tennessee's Attorney General stating that the Department "hope[s] to have a decision within the next 60 days."  Letter at 1.  As far as the court is aware, no such decision has been made.

Plaintiffs—the two aforementioned organizations and three individuals who have been sentenced to death in Tennessee—challenge the validity of the review process.  They allege that vesting certification authority in the Attorney General is unconstitutional for two reasons: (1) it violates the Fifth Amendment's Due Process Clause because the Attorney General is an inherently biased decisionmaker, and (2) it violates the separation of powers because granting the Attorney General such authority "encroaches upon core judicial functions under Article III to decide habeas corpus petitions."  Am. Compl. ¶¶ 91–99.

Plaintiffs initially moved for a temporary restraining order, which the court denied.  Order, ECF No. 20 [hereinafter Order].  Plaintiffs did not establish a substantial likelihood that this court had statutory jurisdiction over their claims; rather, such jurisdiction rested exclusively with the D.C. Circuit.  *Id.* at 2–4.  Plaintiffs also did not demonstrate they would suffer irreparable harm absent emergency relief.  *Id.* at 4–5.  Afterward, Plaintiffs filed an amended complaint.  *See* Am. Compl.  Defendants now move to dismiss.  *See* Defs.' Mot. to Dismiss for Lack of Jurisdiction and Standing, ECF No. 31 [hereinafter Defs.' Mot.].

For the same reasons as in its prior order, the court concludes that it lacks statutory jurisdiction to hear Plaintiffs' claims. *See* Order at 2–4.[2]

## II.

### A.

Congress granted the D.C. Circuit "exclusive jurisdiction" over "[t]he determination by the Attorney General regarding whether to certify a State under this section." 28 U.S.C. § 2265(c). Under Circuit precedent, that "exclusive jurisdiction" extends beyond review of the Attorney General's determination itself. "[W]here a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 78–79 (D.C. Cir. 1984). So, under § 2265(c), the D.C. Circuit has exclusive jurisdiction to review not only a final certification decision by the Attorney General, but also any claim that "might affect" its future power to review such a decision. Plaintiffs' claims—which challenge the validity of ongoing review of a state's certification request—are of that type.

Start with their bias claim. The D.C. Circuit has spoken clearly on the subject. It has held that claims of decisionmaker bias "might affect the Court of Appeals' future statutory power of review" and are therefore subject to its "exclusive jurisdiction." *Air Line Pilots Ass'n, Int'l v. Civ. Aeronautics Bd.*, 750 F.2d 81, 88 (D.C. Cir. 1984). And while the D.C. Circuit has not explicitly held as such with respect to separation-of-powers claims, they have the power to affect its future jurisdiction just the same. In fact, Plaintiffs acknowledge that a decision in their favor would deprive the D.C. Circuit of any ability to review an eventual certification determination. *See* Pls.' [Corrected] Opp'n to Defs.' Mot., ECF No. 36-1 [hereinafter Pls.' Corrected Opp'n], at

---

[2] In light of this conclusion, the court does not reach Defendants' standing and ripeness arguments. Defs.' Mot., Defs.' Mem. in Supp. of Defs.' Mot., ECF No. 31-1, at 14–20.

19.   Plaintiffs nevertheless submit that, if the court so holds, the D.C. Circuit "would not have jurisdiction to protect" (because the Attorney General would be foreclosed from making a certification "determination") and thus there is no "interfere[nce] with the Court of Appeals' subsequent jurisdiction over the merits of a final agency decision." *Id.*  But regardless of how it is framed, such an outcome necessarily entails this court rendering a decision "affect[ing]" that very jurisdiction.  *TRAC*, 750 F.2d at 78–79.  This the court cannot do.

**B.**

Plaintiffs raise several counterarguments.  None are persuasive.  Plaintiffs start with the statutory text, emphasizing that the statute grants the D.C. Circuit the exclusive power to review only the Attorney General's "determination" whether to certify a state.  Pls.' Corrected Opp'n at 4–5.  Plaintiffs' constitutional challenges to the structure of the review process, they reason, are distinct from that ultimate certification decision.  *See id.*  That may be.  But as already explained, the D.C. Circuit interprets jurisdictional provisions like these to grant it exclusive review over claims that might affect its future jurisdiction to review the agency's final decision.  *TRAC*, 750 F.2d at 78–79.  Plaintiffs' claims fit that bill.

Plaintiffs' citation to *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), does not move the needle.  Pls.' Corrected Opp'n at 4.  In *McNary*, the Court interpreted § 210(e)(1) of the Immigration and Nationality Act, which provides that "[t]here shall be no administrative or judicial review of a determination respecting an application for adjustment of status," except as to an order of exclusion or deportation in the courts of appeals.  8 U.S.C. § 1160(e)(1), (3).  Notwithstanding that provision, the plaintiffs filed a class action in district court challenging on statutory and constitutional grounds the process by which the agency made status eligibility decisions.  *McNary*, 498 U.S. at 487–88.  The Court held that the INA did not jurisdictionally bar

4

their suit. *Id.* at 494. It reasoned that § 210(e)(1) "describ[ed] the process of direct review of individual denials of . . . status, rather than as referring to general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id.* at 492. The plaintiffs' suit therefore was properly before the district court. *Id.* at 494. Plaintiffs in this case would have the court read § 2265(c) the same way—as applying only to reviews of "[certification] determination[s] by the Attorney General" and not to constitutional challenges to the certification process.

There are indeed some parallels between the statutory language at issue in *McNary* and that contained in § 2265(c). But several additional considerations supported the Court's conclusion in *McNary* that are absent here. Those included that the statute confined the scope of review to the administrative record, the agency's determinations were subject to abuse-of-discretion review, and the plaintiffs would have no opportunity for meaningful judicial review otherwise. *See id.* at 492–96. Such considerations—particularly the final one—make *McNary* inapposite. *See Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935, 943–44 (D.C. Cir. 2021). The D.C. Circuit has long emphasized that access to meaningful review is the "focus" of *McNary* and its progeny. *Johnson v. U.S. R.R. Ret. Bd.*, 969 F.2d 1082, 1086 (D.C. Cir. 1992); *see also Daniels v. Union Pac. R.R. Co.*, 530 F.3d 936, 943–44 (D.C. Cir. 2008) ("[T]he availability of effective judicial review is the touchstone of the *McNary* exception."). Plaintiffs can raise and receive meaningful review of their constitutional claims before the D.C. Circuit. *See Jarkesy v. SEC*, 803 F.3d 9, 21 (D.C. Cir. 2015) (describing the "high price of accessing review" as "the key factor supporting district-court jurisdiction" (cleaned up)). Moreover, Plaintiffs' purely legal claim does not depend on any factual development in the administrative record. "Unlike in *McNary*, the court [of appeals] is thus not handcuffed to the administrative record at all or otherwise constrained by the agency's

resolution." *Miriyeva*, 9 F.4th at 944; *see also Jarkesy*, 803 F.3d at 21. Finally, § 2265(c) provides for "de novo review," 28 U.S.C. § 2265(c)(3), which "'lends substantial credence to the conclusion' that the review scheme applies to [Plaintiffs'] challenges." *Miriyeva*, 9 F.4th at 944 (quoting *McNary*, 498 U.S. at 493). *McNary* therefore does not control this case's outcome.

Plaintiffs also attempt to circumscribe *TRAC*'s reach. They describe its "limited holding" as decided in the "particular context of unreasonable agency delay." Pls.' Corrected Opp'n at 17. They then characterize it as applying only to a "narrow band" of claims, emphasizing that "cases transferred to appellate courts under *TRAC* have only presented claims challenging final agency action, the manner in which agency process was implemented, or the agency's jurisdiction on statutory grounds." *Id.* (internal quotation marks omitted) (citing cases). While that may be the trend, *TRAC* itself contains no such limitation. Quite the opposite: it observed that "[t]here may be a small category of cases in which the underlying claim is *not* subject to the jurisdiction of the Court of Appeals (and thus adjudication of the claim in the District Court will not affect any future statutory review authority of the Circuit Court)." *TRAC*, 750 F.2d at 78 (emphasis added). These are "very limited circumstance[s]" where "a denial of review in the District Court will truly foreclose all judicial review." *Id.* Thus, contrary Plaintiffs' description, it is the "exception" to the exclusive-jurisdiction rule that is "narrow," not the rule itself. *Id.* And Plaintiffs' claims do not fall within this narrow exception because, as already described, they can raise their challenges in the D.C. Circuit. *See Ukiah Adventist Hosp. v. FTC*, 981 F.2d 543, 550 (D.C. Cir. 1992).

Plaintiffs' attempt to distinguish *Air Line Pilots* fares no better. As they did at the emergency relief stage, Plaintiffs note that, unlike here, "the alleged bias at issue in *Air Line Pilots* was not a structural constitutional claim," but rather a "claim that particular actors involved in a specific administrative proceeding were biased." Pls.' Corrected Opp'n at 19. Plaintiffs still have

6

not explained why this distinction matters. *See* Order at 3. They point out that the *Air Line Pilots* court declined to address the bias claim on interlocutory review in part because of the possibility that the decisionmaker may change over the course of the administrative proceedings. Pls.' Corrected Opp'n at 19. Their alleged bias claim is different, they argue, because it inheres in the office of the decisionmaker, regardless of who actually occupies it, and thus is "not amenable to any potentially ameliorating change in circumstances." *Id.* at 20. But the D.C. Circuit's decision not to exercise its *interlocutory* jurisdiction is entirely separate from the exclusivity of that jurisdiction. *See Air Line Pilots*, 750 F.2d at 88 ("[A]lthough we recognize our jurisdiction over interlocutory claims of bias, we will take no action on the merits of the bias claim at this time."). Its reasons for declining to exercise its jurisdiction there thus do not affect this court's lack of jurisdiction here.

Lastly, Plaintiffs invoke *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and like cases as standing for the proposition that "statutory review schemes do not silently strip district courts of jurisdiction over structural constitutional claims to enabling legislation." Pls.' Corrected Opp'n at 16; *see also id.* at 5–6, 10, 20. *Axon* emphasized the "'here-and-now injury' of subjection to an unconstitutionally structured decisionmaking process," which "cannot be undone" after the fact. *Axon*, 598 U.S. at 191–92 (citation omitted). "[N]owhere in its post-*Axon* decisions," Plaintiffs continue, "does the D.C. Circuit suggest that district courts lack jurisdiction under *Axon* because of *TRAC* and its progeny." Pls.' Corrected Opp'n at 16.

Plaintiffs overread *Axon*. "In *Axon*, the question before the Supreme Court was whether parties to an ongoing proceeding before a governmental agency had to first go through the agency's administrative process before suing in federal court to challenge the administrative proceeding's structural constitutionality." *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1335 (D.C. Cir. 2024).

The Court held that the challenge "can begin before the agency acts." *Id.* at 1336. *Axon* thus primarily answered the question of *when* such a suit can be brought. This case presents not a question of when, but of where. As *Air Line Pilots* illustrates, Plaintiffs can, consistent with *Axon*, bring their constitutional challenges before the Attorney General reaches a final decision on Tennessee's application—they just must do so before the D.C. Circuit. *See Air Line Pilots*, 750 F.2d at 88. Nothing in this opinion prevents them from following that course. Once again, *Axon* "did not overrule the D.C. Circuit's clear holdings in *TRAC* and *Air Line Pilots*." Order at 3–4; *see also id.* at 4 ("Plaintiffs, however, admitted at oral argument that the two lines of cases can be reconciled."). The court is therefore bound to conclude that it lacks jurisdiction over Plaintiffs' claims.

### C.

One final point bears addressing. To support their reading of *TRAC*, Plaintiffs cite Judge Green's separate opinion in *Ticor Title Insurance Co. v. FTC*, 814 F.2d 731 (D.C. Cir. 1987). Pls.' Corrected Opp'n at 16. Judge Green wrote that "*TRAC* is inapplicable to cases involving challenges to the constitutionality of an agency's enabling statute. Such cases present questions of constitutional law, which require no special administrative expertise to resolve, and do not fall within the 'class of claims' covered by the typical statutory grant of appellate review power." *Ticor*, 814 F.2d at 757–58. Judge Green's view did not garner a majority of the court. Later, in *Time Warner Entertainment Co. v. FCC*, 93 F.3d 957 (D.C. Cir. 1996)—a case neither party cites—the Circuit cited to Judge Green's opinion in acknowledging that "*TRAC*'s applicability to constitutional challenges" remained an open question. *Id.* at 965.

In *Time Warner*, the court held that "*TRAC* does not deprive [the district] court of its general federal question jurisdiction to consider a facial challenge to a statute's constitutionality

*so long as* that challenge is not raised in a suit challenging the validity of agency action taken pursuant to the challenged statute or in a suit that is collateral to one challenging the validity of such agency action." *Id.* (emphasis added). So, rather than holding that district courts have jurisdiction over every such challenge, the Circuit instructed that the posture of the case is key. In *Time Warner*, the agency had only initiated rulemaking. *Id.* at 963. The Circuit thus concluded that the district court had jurisdiction over the plaintiffs' challenge because "the case [was] entirely independent of any agency proceedings, whether actual or prospective." *Id.* at 965.

The court contrasted the case before it with *Ukiah Adventist Hospital v. FTC*, in which it concluded that the district court lacked jurisdiction. Although the challenge in *Ukiah* was "based on the 'purely legal question[]' of [the agency's] jurisdiction," the plaintiff had "brought the jurisdictional challenge *after* the [the agency] had issued an administrative complaint against it." *Time Warner*, 93 F.3d at 965. (first alteration in original) (emphasis added) (quoting *Ukiah*, 981 F.2d at 549). Therefore, if the district court were to enjoin the agency's proceedings as requested, "the statutory obligation of a Court of Appeals to review [the agency's order] on the merits may be defeated." *Id.* (quoting *Ukiah*, 981 F.3d at 549). *TRAC* and *Air Line Pilots* were in an analogous posture, in that individualized agency proceedings had already commenced and were ongoing. *See TRAC*, 750 F.2d at 73–74 (describing specific refund disputes); *Air Line Pilots*, 750 F.2d at 83 (describing specific applications for agency determinations).

This case is more like *Ukiah*, *TRAC*, and *Air Line Pilots* than *Time Warner*. Plaintiffs raised their challenge in response to Tennessee's application for Chapter 154 certification. *See, e.g.*, Am. Compl. ¶ 12. And the Attorney General's review of Tennessee's request is ongoing. Plaintiffs' challenges thus are not "entirely independent of any agency proceedings," *Time Warner*, 93 F.3d at 965, but rather arise directly from them. The court therefore lacks

jurisdiction over Plaintiffs' claims because they might affect the D.C. Circuit's future jurisdiction over the eventual final determination on Tennessee's application.

**III.**

For the foregoing reasons, the court grants Defendants' Motion to Dismiss for Lack of Jurisdiction and Standing, ECF No. 31. A final, appealable order accompanies this Memorandum Opinion.

Dated: July 10, 2026

Amit P. Mehta
United States District Judge